FILED & JUDGMENT ENTERED
Steven T. Salata

Jul 08 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
SHELBY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 13** |
| JEFFERY FRANCIS ROSE ) | Case No. 12-40743 |
| KATHERINE A ROSE ) | |
| ) | |
| Debtors. ) | |

**ORDER**

**THIS MATTER** came before the Court on the Debtors' Motion for Authority to Transfer Real Property to Secured Creditor by Quitclaim Deed and Request for a Presumptive Non-base Fee, filed March 10, 2014. A hearing was held on March 28, 2014. Wayne Sigmon appeared on behalf of the Debtors, (the "Roses"), and Steven Tate appeared on behalf of the Chapter 13 Trustee. The secured creditor in question, the U.S. Small Business Administration (hereinafter, "SBA"), did not respond to the motion, nor did it appear at hearing.

The Roses' Motion asks permission to quitclaim their Residence to the SBA, without its consent. The Motion does not cite any authority to support this relief. Consequently, the parties were given the opportunity to file post-hearing briefs. Because

1

such requests by consumer debtors are becoming more and more common in this district, the Court also invited amicus briefs.[1]

Having considered the arguments presented, the Roses' Motion is **GRANTED IN PART, and DENIED IN PART.**

## FACTS

The Roses filed this Chapter 13 bankruptcy case on December 5, 2012. While the Roses currently reside in North Carolina, their Schedules disclosed joint ownership of an Arcadia, Florida residence (hereinafter, the "Residence"). The Residence has a scheduled value of $30,000.00, and is subject to a mortgage debt in favor of the SBA of some $78,653.47.

The Roses' confirmed Chapter 13 plan provided for the surrender of the Residence to the SBA and granted relief from stay so that the lender might foreclose its mortgage. As of the hearing date on this current motion, now more than a year past confirmation of the Roses' plan,[2] the SBA has neither initiated foreclosure nor asserted control over the Residence. Meanwhile, the Roses find themselves subject to post-petition liabilities relating to the Residence, including ad valorem taxes and maintenance costs. Frustrated, the Roses have asked this Court for permission to quitclaim the Residence to the SBA.

As described below, nothing in the Code or Florida state law[3] compels a creditor

---

[1] The Roses did not brief these matters, citing financial limitations. However, several other constituencies representing consumer debtor interests have done so.

[2] The plan was confirmed on February 13, 2013.

[3] The amicus briefs incorrectly assume the applicable law is North Carolina, but that is of no matter, as the law in both states is the same. Given this, parallel North Carolina cites are included.

2

to foreclose on a debtor's property or accept a quitclaim deed to the same. Nevertheless, under state law, and absent objection by SBA, the Roses may still be able to accomplish their goal. To that end, they will be authorized to tender a quitclaim deed to the SBA, and, potentially, record it.

## DISCUSSION

I.  **Neither the Bankruptcy Code nor State Law Give this Court the Authority to Force a Creditor to Foreclose or Accept a Quitclaim Deed.**

Several potential Code authorities have been suggested in the amicus briefs to justify a debtor transferring property by quitclaim deed to a secured creditor without the creditor's consent. For the reasons stated, none are availing.

A.  <u>Surrender of the Collateral Pursuant to 11 U.S.C. §1325(a)(5)(C) does not Require a Creditor to Accept the Surrendered Property.</u>

11 U.S.C. §1325(a)(5)(C) provides that a Chapter 13 plan may be confirmed if, among other alternatives, "the debtor surrenders the property securing such a claim to the holder." The Roses' confirmed plan provides for surrender of the Residence to the SBA for foreclosure. Consistent therewith, the Roses have vacated the Residence and made it available to the SBA.

The suggestion has been made that this Plan provision supports a transfer of title to the lender without its consent; however, the weight of the case law is to the contrary. Section 1325(a)(5)(C) does not serve to pass ownership of the Residence to a lender; nor does it require the lender to foreclose its mortgage.

While "surrender" is not a defined term in the Code, it has a well defined meaning. "Surrender" has been described as the relinquishment of all rights in property, including the right to possess the collateral. *IRS v. White (In re White)*, 487 F.3d 199, 205

3

(4th Cir. 2007); 8 Collier on Bankruptcy ¶ 1325.06[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005).

Although "surrender" envisions a debtor relinquishing his or her rights in the collateral, there is no corresponding requirement that the lender to do anything with the property. *See Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 18-19 (1st Cir. 2006); *Canning v. Beneficial Main, Inc. et al. (In re Canning)*, 442 B.R. 165 (D. Me. 2011); *In re Arsenault*, 456 B.R. 627 (Bankr. D. Ga. 2011).

The limitations of a Section 1325 "surrender" were explored in the case of *In re Arsenault*. 456 B.R. 627. There, as here, the debtors' confirmed Chapter 13 plan surrendered Florida real property to the secured creditor. When the lender failed to foreclose or otherwise take responsibility for the property, the debtors sued, accusing the lender of a §362 stay violation. In resolving that dispute, that bankruptcy court considered whether a "creditor can be compelled to take affirmative steps to accept surrendered collateral pursuant to 11 U.S.C. §1325(a)(5)(C), and whether its failure to do so violates the automatic stay or confirmation order." *Id.* at 629. It concluded that the creditor could not be so compelled.

*Arsenault* holds that a secured creditor is entitled to control its remedies; thus "a plan cannot require a secured creditor to accept a surrender of property or take possession of or title to it through repossession or foreclosure." *Id.* at 630 (*quoting* W. Homer Drake, Jr., Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice and Procedure* § 9C:9 at 682 (2010–11 ed.)) (additional citations omitted) (internal quotation marks omitted). While the creditor's failure to foreclose might leave the debtors with continued liabilities, these are by-products of property ownership. *Id.* at 631. Although the debtors prefer to

4

walk away from the property, their desire does not justify shifting these burdens to the lender. As *Arsenault* explains, the Code does not authorize bankruptcy courts "to create substantive rights" not otherwise available under applicable statutes; nor does it "constitute a roving commission to do equity." *Id* ; *accord*, *In re Landbank Equity Corp.*, 973 F.2d. 265, 271 (4th Cir. 1992).

Most courts that have considered the matter agree with *Arsenault*. As long as the secured creditor's actions do not "constitute a subterfuge intended to coerce payment of a discharged debt," the "secured creditor . . . has the prerogative to decide whether to accept or reject the surrendered collateral." *Canning*, 706 F.3d at 69-70; *see also In re Kahn*, 504 B.R. 409, 410 (Bankr. D. Md. 2014) (noting that a debtor cannot force a secured creditor to accept proffered property); *In re Brown,* 477 B.R. 915, 917 (Bankr. S.D. Ga. 2012) (finding no authority for court to require secured creditor to assume ownership obligations in property).[4]

Admittedly, two unpublished cases from our sister court in the Eastern District of North Carolina have permitted Chapter 13 debtors to surrender property by quitclaim deed to a mortgage lender absent consent. *See In re Perry*, No. 12-01633-8-RDD, 2012 WL 4795675, at *2 (Bankr. E.D.N.C. Oct. 9, 2012); *In re Williams*, No. 10-06243-8-SWH (Bankr. E.D.N.C. Jan. 30, 2014). However, it must be noted that these are unpublished decisions that do not identify a legal basis for their holdings. Notably, the lenders in these cases did not respond or defend against the motions. Thus, while pragmatic, *Perry* and *Williams* are of limited precedential value.

---

[4] Other cases with similar holdings include *In re Pratt*, 462 F.3d 14 (1st Cir. 2006); *In re Moore*, 477 B.R. 918 (Bankr. S.D. Ga. 2012); *In re Colon*, 2011 WL 4706289 (Bankr. D. Utah 2011); *In re Spencer*, 457 B.R. 601 (E.D. Mich. 2011); *In re Cormier*, 434 B.R. 222 (Bankr. D. Mass. 2010); *In re White*, 282 B.R. 418 (Bankr. N.D. Ohio 2002).

5

B. <u>Vesting Under 11 U.SC. §1322(b)(9) does not Require a Creditor to Accept Title to Property.</u>

Alternatively, it has been suggested that an encumbered property may be forced upon the lender under 11 U.S.C. §1322(b)(9), which provides in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity.

Although §1322(b)(9) contemplates that a plan may revest property in third parties, it does not state whether such relief can be imposed on a third party at the debtor's election. To date, only one published decision has ever read this Code section to **require** a lender to accept title to a property. *See In re Rosa,* 495 B.R. 522 (Bankr. D. Haw. 2013). As discussed below in Section I.E., taking title by deed could impair a lender's rights in the collateral, subject it to ownership liabilities that it never would have voluntarily assumed, and contravene state property law. Consequently, this Court declines to adopt the *Rosa* interpretation of this statute.

C. <u>11 U.S.C. §105 does not Allow Courts to Alter the Substantive Rights of Parties.</u>

It has also been suggested that the power to require a lender to accept title to its collateral exists under the Bankruptcy Court's catch-all powers, as codified in 11 U.S.C. §105(a). That provision declares that a bankruptcy court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

While bankruptcy courts have fashioned relief under Section 105(a) in a wide variety of situations, this provision does not allow courts to alter the substantive rights of the parties. *In re Landbank Equity Corp.* 973 F.2d 265, 271 (4th Cir. 1992). Rather, the

6

powers granted by this section must be exercised in a manner consistent with the provisions of the Code and other applicable law. *Id.*; *Petro v. Mishler*, 276 F.3d 375, 377–378 (7th Cir. 2002).

There is no published case law construing Section 105 to permit a debtor to transfer property to its mortgage lender by fiat. This decision will not be the first.

D. <u>Florida Law Does not Require a Creditor to Initiate Foreclosure or Accept Title to Property.</u>

As the *Arsenault* decision points out, under state law, a mortgage lender cannot be compelled to initiate foreclosure. *Arsenault*, 456 B.R. at 630; *accord Rabun Cnty. Bank v. Earnhardt*, No. COA 13-93, 2013 WL 4007520, at *1-2 (N.C. Ct. App. Aug. 6, 2013) (A creditor is entitled to elect the remedies that it wishes to pursue against a defaulting party. It cannot be required to foreclose upon or take title to property.); *G.E. Capital Mortgage Servs., Inc. v. Neely*, 135 N.C. App. 187, 192 (1999).

Similarly, a lender may not be compelled to accept title to property. As every first year law student knows, a transfer of real property is not effective unless the deed is delivered and the grantee accepts it. *Berry v. Berry,* 992 So. 2d 898, 899 (Fla. Dist. Ct. App. 2d Dist. 2008), *review dismissed*, 2 So. 3d 981 (Fla. 2009); *accord Ballard v. Ballard*, 230 N.C. 629, 633 (1949). Allowing a debtor to use the Code to unilaterally vest title in a secured creditor by fiat would eviscerate these accepted state law requirements.

E. <u>Forcing a Lender to Take Title to Property Would Open a Pandora's Box of Unintended, Injurious Consequences.</u>

Perhaps one reason that state law doesn't permit a debtor to simply deed property over to its lender is that doing so could significantly injure the lender.

First, and obviously, forcing a lender to take title causes it to assume burdens of ownership for which it did not contract. The costs of foreclosure or repossession, coupled with ongoing obligations to insure the property and to pay ad valorem taxes, may well exceed any present net realizable value.[5]

Second, if the property is subject to multiple encumbrances, requiring a senior lender to accept title to its collateral would destroy that lender's priority lien position vis a vis junior mortgages, liens, and accrued HOA obligations. Foreclosure by such a senior lender cuts off junior mortgages and liens. By contrast, the quitclaim scenario makes the lender owner of the property and, under the doctrine of merger, it takes title subject to these interests. *See Sanderson v. Hudlett,* 832 So.2d 845, 848 (Fla. 4th DCA 2002) (*citing Gourley v. Wollam,* 348 So.2d 1218, 1220 (Fla. 4th DCA 1977); *accord Washington Furniture Co. v. Potter*, 188 N.C. 145 (1924).

A worse fate awaits the lender if the quitclaimed property is subject to environmental contamination. Making the lender the record owner its collateral potentially subjects it to personal liability for existing environmental contamination, as demonstrated by the case of *In re Gollintz.* 456 B.R. 733 (Bankr. W.D.N.Y. 2011). There, an individual who had operated a gas station on his property received a citation for several breaches of the state's petroleum bulk storage regulations. He retired, filed

---

[5] This doesn't mean that a lender resisting the proposed conveyance should be required to cancel its mortgage. Since real property values fluctuate, it can be reasonable for a creditor to decline to exercise its state law rights at one point in time based upon the current market value of the property, but wish to preserve the same rights for later use when property values recover.

Chapter 13, and through his confirmed plan, surrendered the station to his secured creditor, the county taxing authority. When the New York Department of Environmental Conservation tried to compel Golintz to clean up the property, he maintained that by virtue of his surrender, responsibility lay with the County, even though the County had not foreclosed. The bankruptcy court disagreed, ruling that surrender did not equate to transfer of title. *Id.* at 736. Golintz was required to clean up the property. *Id.* at 738.

The potential for personal liability also exists if the collateral property is dilapidated, damaged, or otherwise a public nuisance. Witness the case of *In re Phillips*, where a debtor recorded a quitclaim deed to her mortgage holder in an effort to relieve herself of public nuisance liabilities relating to her property. 368 B.R. 733 (Bankr. N.D. Ind. 2007). She then sued both lender and the city in hopes of forcing the lender to bring the property up to code. *Id.* at 735. The bankruptcy court rightfully declined to permit this craven attempt to foist liability on the lender. *Id*. at 744.

As these cases point out, permitting a debtor to force its mortgage lender to accept title to property opens a Pandora's box of possible injuries to lenders.

**II.     Florida State Law May Allow the Roses to Quitclaim their Property to SBA, Provided that the Lender Does not Object.**

For the reasons stated above, SBA cannot be compelled to accept title to the Roses' property; however, under state conveyance law, the Roses still might be able to achieve their goal of transferring the Residence to the SBA provided that SBA does not object. To that end, this Court grants the Debtors permission to tender the deed to SBA for its consideration.

As noted previously, surrender of a property by deed requires acceptance by the grantee in order to be effective. Delivery of a deed and its acceptance are simultaneous,

9

correlative acts. 23 Am. Jur. 2d, Deeds § 150 (2014).

This begs the question of what constitutes acceptance of a deed under state law. Certainly, physical acceptance works. However, under some circumstances, acceptance can also be presumed.

One such case is where a deed is for the benefit of the grantee and imposes no burdens or duties on him or her. *Smith v. Owens*, 91 Fla. 995, 1000, 108 So. 891, 893 (1926); *accord Corbett v. Corbett*, 249 N.C. 585, 590 (1959). When a grantor causes a deed conferring substantial benefits on the grantee to be recorded, it creates prima facie and strong presumptive evidence of a delivery to and acceptance by the grantee. *Ellis v. Clark*, 39 Fla. 714, 721, 23 So. 410, 412 (1897); *accord Harris v. Steele*, 43 N.C. App. 44, 46 (1979).

Further, assent and ratification of acceptance of a deed may be inferred from the grantee's conduct. *Riehl v. Bennett*, 142 So. 2d 761, 763 (Fla. Dist. Ct. App. 2d Dist. 1962); *accord Messer v. Laurel Hill Assocs.*, 93 N.C. App. 439, 445 (1989). After a grantee obtains knowledge of the deed, its acceptance of the property may be inferred from its conduct, including (1) failing to renounce the deed, (2) retaining possession of the property, (3) conveying or mortgaging the property, or (4) otherwise exercising the rights of an owner of the property. *Id.*

On the other hand, the lender may avoid taking title by simply objecting to the conveyance. Even in cases where there is a presumption of acceptance, the presumption may be overcome by actual dissent on the part of the grantee. *Smith,* 91 Fla. at 1003, 108 So. at 891; *accord Williams*, 15 N.C. App. at 649.

The problem in this case is that there is no indication of whether the SBA is

willing to accept the proposed transfer of the Roses' Residence. Having previously failed to exercise its foreclosure rights, the SBA has now ignored the Roses' motion, the hearing, and a post-hearing opportunity to brief these matters. Such indifference comes very close to supporting a presumption of acceptance under the aforementioned authorities. However, since an actual deed has not yet been delivered to the SBA, and out of an abundance of caution, this Court will afford the SBA a final opportunity to state its position before the property is conveyed. To that end,

**IT IS THEREFORE ORDERED:**

1. The Debtors' Motion is **DENIED** in the respect that the SBA will not be required to accept title to the Residence;

2. However, the Debtors' Motion is **GRANTED** to this extent:

> a. the Debtors may prepare and forward to the SBA, within thirty (30) days of this Order, an executed quitclaim deed to the Residence;
>
> b. the SBA shall have sixty (60) days from delivery of said quitclaim deed in which to take one of the following steps:
>
>> i. record the deed, and thereby accept ownership of the Residence;
>>
>> ii. reject the deed and the proposed conveyance through a written document filed with this Court, and served on the Debtors and their counsel; or
>>
>> iii. initiate foreclosure against the Residence, thereby indicating rejection of the proposed conveyance by quitclaim deed.

3. Should the SBA fail to take any of the steps outlined in paragraph 2, then at the expiration of the sixty (60) day tender period, the Debtors will be permitted to record

11

the quitclaim deed in the applicable Florida registry and thereby transfer the property to the SBA. In this event, recordation of the deed shall be considered final conveyance of the Residence to the SBA, not subject to later repudiation.

      4.      Debtors' counsel is awarded a $450 non-base fee in connection with this matter.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |